UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Hearing Associates, Inc.,** | **Civil Case No. 15-2084 (SRN)** |
| **Plaintiff-Appellee,** | |
| v. | |
| **Jonathan P. Gervais,** | **MEMORANDUM OPINION & ORDER** |
| **Defendant-Appellant** | |
| _____ | |
| **Hearings Associates, Inc.,** | **Civil Case No. 15-2085 (SRN)** |
| **Plaintiff-Appellee,** | |
| v. | |
| **Sara K. Downs,** | |
| **Defendant-Appellant.** | |

Andrea M. Hauser, Leonard O'Brien Spencer Gale & Sayre Ltd., 100 South Fifth Street, Suite 2500, Minneapolis, Minnesota 55402 for Appellants Jonathan P. Gervais and Sara K. Downs

Gregory M. Erickson, James V.F. Dickey, Vincent J. Fahnlander, William F. Mohrman, Mohrman, Kaardal & Erickson, P.A., 150 South Fifth Street, Suite 3100, Minneapolis, Minnesota 55402, for Appellee Hearing Associates, Inc.

SUSAN RICHARD NELSON, United States District Judge

Before the Court are cross appeals in the matters of <u>Hearing Associates, Inc. v. Gervais (In re: Gervais)</u>, Nos. 14-BKY-50304, ADV 14-5017, and <u>Hearing Associates, Inc. v. Downs (In re: Downs)</u>, Nos. 14-BKY-50305, ADV 14-5018.[1] (Notices of Appeal

---

[1] This Court has jurisdiction to hear appeals from final judgments, orders, and decrees entered by the United States Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1),

[Doc. Nos. 1-1]; <u>Gervais</u> Notice of Cross-Appeal [Doc. No. 6]; <u>Downs</u> Notice of Cross-Appeal [Doc. No. 5].) Defendants-Appellants Jonathan Gervais and Sara K. Downs and Plaintiff-Appellee Hearing Associates, Inc. ("Hearing Associates") appeal two March 20, 2015 rulings of the Honorable Robert J. Kressel, Bankruptcy Judge for the United States Bankruptcy Court, District of Minnesota ("Bankruptcy Court"), in bankruptcy adversary proceedings brought by Hearing Associates.[2] The underlying Bankruptcy Court Orders (the "Orders") (<u>Gervais</u> [Doc. No. 7-19]; <u>Downs</u> [Doc. No. 6-18]) granted in part and denied in part the parties' cross motions for summary judgment. Judgment was entered in both actions on March 20, 2015. (Judgment [Doc. Nos. 1-1].) For the reasons set forth below, the Court respectfully reverses the decisions of the Bankruptcy Court and remands the cases for further proceedings not inconsistent with this opinion.

I.   BACKGROUND

   A.   Factual Background

This case arises from an underlying Minnesota state court lawsuit brought by Hearing Associates against its former employees, Gervais and Downs, and Hearing Wellness Center LLC. In that underlying action, Hearing Associates alleged that for

---

(c)(1)(A) (2010).

   [2] Hearing Associates filed two separate adversary proceedings in Bankruptcy Court – one against Gervais, and the other against Downs. While they were filed as two separate matters, the Bankruptcy Court jointly considered the parties' cross motions for summary judgment. Likewise, before this Court, the two matters were filed as separate appeals, but consolidated for purposes of briefing and argument. The underlying Bankruptcy Court records for Gervais and Downs are substantially identical. Unless otherwise noted, the Court's citations to the record in <u>Gervais</u> apply equally to Appellant Downs. To the extent that there are any differences, the Court shall so indicate.

several years, it employed Gervais and Downs as audiologists. (State Court Compl. ¶¶ 1-3, Appellants' Ex. A.) Downs operated Hearing Associates' audiology business with the Raiter Clinic in Cloquet, Minnesota (id. ¶ 8), and Gervais operated Hearing Associates' audiology business with the Lake View Clinic in Two Harbors, Minnesota. (Id. ¶ 9.)

Hearing Associates further alleged that when it hired Gervais and Downs, both signed employment agreements. (Id. ¶ 6.) The purported agreements contained prohibitions against (1) disclosing proprietary information outside of the company; (2) engaging in any other gainful employment without the consent of Hearing Associates; or (3) assisting any competing business or organization, preparing to compete with Hearing Associates, or hiring any Hearing Associates' employees. (Id.)

Some years after Gervais and Downs began working for Hearing Associates, the company's owner and founder, Dr. John Voss, contemplated retiring and selling his interest in the business to Gervais and Downs. (Id. ¶ 10.) Hearing Associates alleged in its Complaint that when Voss offered to sell his interest to Defendants and a third employee, Defendants had already determined to leave Hearing Associates' employment and open a competing business. (Id. ¶ 14.) On May 17, 2012, Defendants resigned from their positions at Hearing Associates, effective June 29, 2012. (Id. ¶ 18.) However, on May 24, 2012, prior to their planned departure date, Hearing Associates terminated them, asserting that they had created an "unmanageable work environment," which included telling patients about the new company of Gervais and Downs, Hearing Wellness Center, LLC. (Id. ¶ 19.)

As part of their termination, Gervais and Downs signed documents entitled

"Acceptance of Resignation and Early Termination Notice." (Id. ¶ 20, Ex. 2 to Compl. ) This document provided reasons for termination, including "insubordination and unprofessional conduct, including yelling at other staff," "refusal to continue to work until your date of resignation," and "[u]se of company time and resources to conduct personal business related to your next business venture." (Id.) In a portion of the document relating to "Confidential Information," Gervais and Downs acknowledged that they were employed with Hearing Associates "in a position of trust and confidence" and "had access to certain information and trade secrets relating to business affairs of [Hearing Associates] . . . which [Hearing Associates] regards as proprietary and confidential." (Id. ¶ 21.) The document further stated that Gervais and Downs were "on notice" that the Uniform Trade Secrets Act and other agreements obligated them not to disclose or make available "confidential information or trade secrets" or to use "confidential information or trade secrets for your own benefit or for the benefit of another." (Id. ¶ 22.)

After Hearing Associates terminated Gervais and Downs, both the Raiter Clinic and the Lake View Clinic terminated their relationships with Hearing Associates and switched their audiology business to Hearing Wellness Center, which Gervais and Downs had recently formed. (Id. ¶ 25.)

### B.     Procedural Background

In December 2012, Hearing Associates filed its lawsuit against Gervais, Downs, and Hearing Wellness Center, asserting claims for breach of employment agreement, tortious interference with contract, violation of the Minnesota Trade Secrets Act, and

4

breach of fiduciary duty/duty of loyalty.  (Id., Counts I-IV.)  Among the requested remedies, Hearing Associates sought exemplary damages and attorney's fees for Defendants' "willful and malicious misappropriation of Hearing Associates' trade secrets."  (Id. at 10.)

Gervais and Downs denied the allegations in the Complaint and asserted counterclaims against Hearing Associates for promissory estoppel, unjust enrichment, quantum meruit, violations of the Minnesota Payment of Wages Act, Minn. Stat. §§ 181.13, 181.101, and 181.145, and tortious interference with a prospective advantage. (Countercl. Counts I-VI, Appellants' Ex. B.)  Among other things, they claimed that they did not have written employment agreements with Hearing Associates, and contrary to Hearing Associates' promises, they failed to receive promised-for sales commissions. (Id. ¶¶ 9, 11.)  They further alleged that Hearing Associates refused to release the National Provider Identifier associated with Gervais and Downs, without which Gervais and Downs were unable to bill certain insurers for certain services.  (Id. ¶¶ 15-21.)

Following motion practice in state court, the trial court granted summary judgment to Hearing Associates on Defendants' counterclaims and granted summary judgment to Gervais and Downs on Plaintiff's claims of tortious interference with contract (Count II), misappropriation of trade secrets (Count III), and breach of fiduciary duty (Count IV). (State Court Order of 1/13/14 at Ap-D-47, 53-57, Appellants' Ex. C.)   As to the tortious interference claim, the trial court found that Hearing Associates failed to demonstrate that Gervais and Downs intentionally procured a breach of Hearing Associates' contracts with the Raiter and Lake View Clinics, and because Gervais and Downs "played no apparent

5

role in the two clinics' decisions to discontinue renting space to Hearing Associates and to not renew the lease when it expired." (Id. at Ap-D-54.) In dismissing the claim for misappropriation of trade secrets, the trial court explained that the general financial data claimed to have been misappropriated did not rise to the level of a trade secret. (Id. at Ap-C-55-56.) As to the breach of fiduciary duty claim, the trial court found that the parties were not in a fiduciary relationship. (Id. at Ap-C056-57.)

The matter thus proceeded to trial on Hearing Associates' claims of breach of contract (Count I) and breach of the duty of loyalty (Count IV). (State Court Order of 1/21/14 at Ap-D-66, Appellants' Ex. D.) The state court denied Hearing Associates' motion to add a claim for punitive damages, finding that Hearing Associates failed to provide clear and convincing evidence that the acts of Gervais and Downs showed a deliberate disregard for the rights of others. (State Court Order of 1/21/14 at Ap-D-70, 76, Appellants' Ex. D.) Hearing Associates renewed its request for punitive damages during trial, which the trial court again denied. (2/3/14 Trial Tr. at 126-29, Appellants' Ex. T.)

Following a trial from January 28, 2014 through February 6, 2014, the jury found for Hearing Associates on both of its claims and determined that it was entitled to $31,586.37 in damages for Downs' breach of contract, $11,000.22 in damages for Gervais' breach of contract, and $109,151.18 in lost profit damages for the breach of the duty of loyalty caused by Gervais and Downs. (Special Verdict Form, Appellants' Ex. F.) The jury awarded no damages in the form of forfeited wages and commissions for the breach of the duty of loyalty, entering $0.00 on the Special Verdict Form for that category

of damages.  (Id.)   The Jury Instructions and Special Verdict Form contained no language regarding intent to cause injury or harm.  (See id.; Jury Instructions, Appellants' Ex. E.)

A hearing on the parties' post-trial motions was scheduled for April 29, 2014. Among other things, Hearing Associates sought review of the denial of damages for forfeiture of wages in the amount of $78,580.86 against Gervais and Downs.  (Gervais, No. 15-CV-2084 (SRN), Adversary Compl. ¶ 14, n.2 [Doc. No. 7-1]; Downs, No. 15-CV-2085, Adversary Compl. ¶ 14, n.2 [Doc. No. 6-1].)

One day prior to the post-trial hearing, however, Gervais and Downs filed for Chapter 7 bankruptcy.  (See In re: Gervais, No. 14-BKY-50304 (RJK) (Bankr. D. Minn.) ("Gervais Chapter 7 Action"); In re: Downs, No. 14-BKY-50305 (RJK) (Bankr. D. Minn.) ("Downs Chapter 7 Action"). The Chapter 7 filings automatically stayed the state court action pursuant to 11 U.S.C. § 362(a), and no final state court judgment was entered.

On July 25, 2014, Hearing Associates commenced the underlying adversary proceedings against Gervais and Downs, seeking a determination that the debts arising from the jury verdict were nondischargeable debts, excepted from Chapter 7 discharge, pursuant to 11 U.S.C. § 523(a)(6).  (See Gervais, No. 15-CV-2084 (SRN), Adversary Compl. [Doc. No. 7-1]; Downs, No. 15-CV-2085, Adversary Compl. [Doc. No. 6-1].) Section 523(a)(6) of the Bankruptcy Code provides an exception to bankruptcy discharge for debts arising from malicious and willful injuries.  28 U.S.C. § 523(a)(6) (2010). Hearing Associates sought to recover a judgment against Gervais and Downs in the

7

amount of the original jury verdict, plus the amount of Hearing Associates' wage forfeiture damages, and costs and fees. (See <u>Gervais</u>, No. 15-CV-2084 (SRN), Adversary Compl. [Doc. No. 7-1]; <u>Downs</u>, No. 15-CV-2085, Adversary Compl. [Doc. No. 6-1].)

On July 31, 2014, in Gervais' and Downs' Chapter 7 proceedings, the Bankruptcy Court found that they were entitled to a discharge as debtors under 11 U.S.C. § 727. (Discharge of Debtor, <u>In re Gervais</u>, No. 14-BKY-50304 (RJK) (Bankr. D. Minn. July 31, 2014 [Doc. No. 23]; Discharge of Debtor, <u>In re Downs</u>, No. 14-BKY-50305 (RJK) (Bankr. D. Minn. July 31, 2014 [Doc. No. 25].)

In the adversary proceedings, the Bankruptcy Court heard the parties' cross motions for summary judgment on March 19, 2015. At the hearing, the Bankruptcy Court acknowledged the unusual procedural posture of these actions – namely, that the jury verdict had not been reduced to judgment prior to Gervais' and Downs' Chapter 7 discharges. (Bankr. D. Minn. Tr. of 3/19/15 at 28, Appellants' Ex. Y.)

In response to inquiry from the Bankruptcy Court, counsel for Hearing Associates stated that his client only sought to except from discharge the two claims on which the jury's award was based – breach of contract and breach of the duty of loyalty. (<u>Id.</u> at 7.) As noted, Hearing Associate's Complaint in the adversary proceeding only requested that the debts arising from the jury verdict, as well as the amount of the state court wage forfeiture claim, be declared nondischargeable. (<u>Gervais</u>, No. 15-CV-2084 (SRN), Adversary Compl. ¶ 49 [Doc. No. 7-1]; <u>Downs</u>, No. 15-CV-2085 (SRN), Adversary Compl. [Doc. No. 6-1].) The Bankruptcy Court, however, stated that its ruling would address all of the claims in the underlying state court complaint. (Bankr. D. Minn. Tr. of

3/19/15 at 29, Appellants' Ex. Y.) The court explained:

> [A] disputed claim is still a claim in the bankruptcy court and does raise a debt by the debtor, disputed debt, but a debt, and when the court – bankruptcy court when it determin[es] the dischargeability of the debt, there's no reason that that determination can't be made of a disputed debt, and that's what I am doing here because it seems to me [as] much of this as possible should be left to the state court to finish up and I am going to try and interfere as little as possible in what the state court is doing.
>
> So in other words, stated [another] way in a positive form, the plaintiff's claims and their complaint are claims creating debts and therefore my determination here is of trying to go to whether or not each of those claims is dischargeable or not by its nature.
>
> Well, there's no need for me to resolve the underlying liability or determine whether there's a breach of contract or determine whether there was a contract. I am going to look at each claim in the complaint or really five claims in four counts and we'll address each one and decide which ones are excepted from discharge and which ones are not.

(Id. at 29-30.)

Of the two claims that were tried to a verdict in state court, the Bankruptcy Court held that any debt resulting from the breach of contract claim was dischargeable, but that any debt resulting from the claim for breach of a duty of loyalty was not dischargeable. (Id. at 30-32.) As to both claims, the court considered the elements of the underlying state law claims to determine whether willfulness and maliciousness were met under the Bankruptcy Code. (Id.) In determining that any debt arising from the breach of contract claim was dischargeable, Judge Kressel, in his oral announcement of the ruling, stated, "[t]here's no requirement in a breach of contract claim that there be any sort of intent of any sort, either wilfulness or maliciousness, so I think that Count 1 claim is not willful, malicious and not excepted from the defendant's discharge." (Id. at 30-31.) In contrast,

9

stating that he was convinced that the breach of loyalty would be considered an intentional tort in Minnesota, Judge Kressel indicated that it "is a claim that is willful and malicious if proven."  (Id. at 32.)  The judge did not make any findings of fact or point to facts in the record in support of his determinations.  (Id. at 30-33.)

In addition, Judge Kressel ruled on the three claims that were dismissed from the state court suit on summary judgment and were not part of the jury's verdict.  (Id. at 31-33.)  The Bankruptcy Court found that any debts resulting from the dismissed claims of tortious interference with contract and breach of fiduciary duty were not dischargeable, as they are intentional torts, while any debts resulting from the dismissed Trade Secrets Act claim were dischargeable, because no intent is required for that cause of action.  (Id.)  Also as to these claims, the Bankruptcy Court did not identify any facts in the record in support of his ruling.  (Id. at 30-33.)  The Bankruptcy Court therefore granted partial summary judgment to both sides.

Hearing Associates now appeals the Bankruptcy Court's determination that the debt resulting from the breach of contract claim is not excepted from discharge.  It does not appeal the dischargeability determination regarding any debt resulting from the Trade Secrets Act claim – a claim that was not considered by the jury. (Appellee's Mem. at 4, n.1 [Doc. No. 14].)[3]  Gervais and Downs appeal the Bankruptcy Court's determinations of nondischargeability as to the claims of tortious interference with contract, breach of the duty of loyalty, and breach of fiduciary duty.  (Appellants' Mem. at 1 [Doc. No. 8].)

---

[3] The Court cites to the internal pagination in the parties' memoranda, as opposed to the ECF pagination that appears at the top of each page.

## II. DISCUSSION

In an appeal from a bankruptcy court proceeding, the Court acts as an appellate court. See 28 U.S.C. § 158(a). The Bankruptcy Court's legal conclusions are reviewed de novo and its findings of fact are reviewed for clear error. Tri–State Fin., LLC v. First Dakota Nat'l Bank, 538 F.3d 920, 923–24 (8th Cir.2008). Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), as incorporated by Fed. R. Bankr. P. 7056.

### A. Exception to Dischargeability

As noted, § 523(a)(6) of the Bankruptcy Code exempts certain debts from discharge in bankruptcy, including any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." Debts that arise from injuries inflicted recklessly or negligently do not fall within § 523(a)(6). Kawaauhau v. Geiger, 523 U.S. 57, 64 (1998).

Wilfulness requires a deliberate or intentional injury, not simply a deliberate or intentional act that leads to an injury. Id. at 61. In the Eighth Circuit, "the 'willful' element is a subjective one, requiring proof that the debtor desired to bring about the injury or was, in fact, substantially certain that his conduct would result in the injury that occurred." Blocker v. Patch (In re Patch), 526 F.3d 1176, 1180-81 (8th Cir. 2008) (citing Geiger v. Kawaauhau (In re Geiger), 113 F.3d 848, 852 (8th Cir. 1997) (en banc), aff'd, 523 U.S. at 57)). The willful element is not met if the debtor, while intending to take the action that resulted in the debt, did not intend the action to cause the particular injury. Id.

(finding the debt from the wrongful death lawsuit was dischargeable where the debtor-mother did not intend to cause her son's death by her negligent conduct).

The "malicious" element requires conduct "targeted at the creditor at least in the sense that the conduct is certain or almost certain to cause harm." Waugh v. Eldridge (In re Waugh), 95 F.3d 706, 711 (8th Cir. 1996) (citing Johnson v. Miera (In re Miera), 926 F.2d 741, 743-44 (8th Cir. 1991) (internal citations and quotations omitted)).

A party seeking to invoke this exception must demonstrate by a preponderance of the evidence that the debt is for the two distinct elements of willful injury and malicious injury. In re Patch, 526 F.3d at 1180 (citing Fischer v. Scarborough (In re Scarborough), 171 F.3d 638, 641 (8th Cir. 1999)). "[E]xceptions from discharge are to be strictly construed so as to give maximum effect to the policy of the bankruptcy code to provide debtors with a 'fresh start.'" Geiger, 113 F.3d at 853 (citation omitted).

Collateral estoppel applies in bankruptcy discharge proceedings to bar the re-litigation of issues of fact or law that were determined in a state court action. In re Miera, 926 F.2d at 743; see also Clear Sky Properties LLC v. Roussel (In re Roussel), 504 B.R. 510, 518 (E.D. Ark. 2013). For collateral estoppel to apply, the fact issue to which the doctrine is to be applied must be the same as the one involved in the prior court proceeding and must have been actually litigated, the issue must have been determined by a final judgment, and the determination must have been essential to the prior judgment. In re Miera, 926 F.2d at 741. "In Minnesota, the general rule is that a court's finding of fact or a jury's verdict, standing alone, does not have preclusive effect in a later action between the same parties and on the same subject matter. Only the entry of judgment can

constitute a final adjudication which triggers the bar of collateral estoppel." Moodie-Yannotti v. Swan (In re Swan), 156 B.R. 618, 623 (Bankr. D. Minn. 1993) (citations omitted) (finding that even though judgment was not entered, and despite the general rule, because the debtor failed to take exception to the state court's fraud findings, the debtor therefore acquiesced in the findings, and preclusive effect was given)). Here, because the state court action was not reduced to final judgment, collateral estoppel does not appear to apply. Nor did the Bankruptcy Court apply collateral estoppel, as Judge Kressel noted that the state court proceeding had not "run its course" (Bankr. D. Minn. Tr. of 3/19/15 at 29, Appellants' Ex. Y); furthermore, Judge Kressel determined the dischargeability of three claims that were not submitted to the jury. (Id. at 31-33.)

If collateral estoppel is inapplicable, the bankruptcy court must determine whether or not the debt resulted from willful or malicious injury. Gerard v. Gerard, 780 F.3d 806, 810 (7th Cir. 2015). Courts determining whether the § 523(a)(6) exemption applies must first determine exactly what "injury" the debt is for, and then determine whether the debtor acted willfully and maliciously in causing that injury. In re Patch, 526 F.3d at 1181 (noting that the debt for which discharge was sought was an unliquidated obligation in a wrongful death action, and the injury giving rise to that debt was the wrongful death of the debtor's son). Once the injury is identified, bankruptcy courts examine the facts in the underlying record to determine whether they satisfy the willful and malicious standard of a nondischargeable debt under § 523(a)(6). See id. (examining conduct of debtor as to her son's death). Among the sources that bankruptcy courts typically consider are the underlying jury instructions, special verdict form, hearing transcripts, and/or the trial

13

record. See, e.g., In re Miera, 926 F.2d at 744 (finding that state court judgment and trial evidence in battery action established that willfulness and maliciousness had been litigated in state court proceedings); Ball v. A.O. Smith Corp., 451 F.3d 66, 6-71 (2d Cir. 2006) (examining a certified transcript and written opinion following a state court evidentiary hearing and finding that the findings therein met the Bankruptcy Code's standard for willful and malicious conduct); In re Swan, 156 B.R. at 628 (reviewing the jury's findings and the trial court's legal conclusions and finding that they "match[ed] up to the elements of a debt nondischargeable under § 523(a)(2)(A)" for fraud). The Bankruptcy Court may consider if there were predicate findings going to the factual issue of the debtors' intent, but "[t]he question then is whether the jury found the same sort of intent that § 523(a)(6) requires for nondischargeabilty." KYMN, Inc. v. Langeslag (In re Langeslag), 366 B.R. 51, 60-61 (Bankr. D. Minn. 2007) (holding that the jury findings and state court instructions satisfied § 523(a)(6)'s requirements of willfulness and malice).

Simply categorizing causes of action as intentional or non-intentional, however, does not resolve the question of whether the conduct meets the willful and malicious standard. "Merely because a tort is classified as intentional does not mean that any injury caused by the tortfeasor is willful." Miller v. J.D. Abrams Inc. (In re Miller), 156 F.3d 598, 603 (5th Cir. 1998) (finding that state court record did not establish that a tortious interference with contract claim met the Bankruptcy Code's standard for willful and malicious injury and declining to except judgment on the claim from discharge); see also Osborne v. Stage (In re Stage), 321 B.R. 486, 494-95 (B.A.P. 8th Cir. 2005) (finding that

the element of willfulness was established by the underlying intentional tort, but not the element of maliciousness). Even a breach of contract claim, which contains no element of intent, may be the result of some intentional act and therefore subject to a determination of whether any findings or evidence demonstrate that it meets the willful and malicious requirements of § 523(a)(6). See Dorr & Assocs. v. Pasek (In re Pasek), 129 B.R. 247, 254 (Bankr. D. Wyo. 1991) (examining whether the record in a breach of contract action established a willful and malicious injury under § 523(a)(6), and finding that the facts, as developed at trial, did not establish the requisite injury.)

Here, in determining whether § 523(a)(6) applied to the debts of Gervais and Downs, the bankruptcy court considered only whether the underlying claims involved the element of intent. (Bankr. D. Minn. Tr. of 3/19/15 at 30-33, Appellants' Ex. Y.) The court made no factual findings, nor cited to anything in the record in support of its determinations. This Court understands the Bankruptcy Court's predicament, given the awkward procedural posture of this case. However, the approach taken by the Bankruptcy Court was in error, because, in these circumstances, a bankruptcy court must make factual determinations based on the record and/or conduct an evidentiary hearing if additional evidence is necessary.

### B. Remand

Because of the lack of factual findings below, on appeal, the parties essentially ask this Court to conduct an independent factual determination. But district courts sitting as appellate courts, as this Court does here, may not engage in independent fact finding. Wegner v. Grunewaldt, 821 F.2d 1317, 1320 (8th Cir. 1987) ("[T]he district court may

not make its own independent factual findings. If the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district court may not engage in its own fact finding, but instead, must remand the case to the bankruptcy court for the necessary factual determination."); see also Sholdan v. Dietz, 108 F.3d 886, 888 (8th Cir. 1997) ("If we conclude that the bankruptcy court's findings are silent or ambiguous as to an outcome determinative fact question, we may not make our own findings but must remand the case to the bankruptcy court for the necessary factual determination."); In re Waugh, 95 F.3d at 711 ("[T]he district court reviews an order of the bankruptcy court as an appellate court, and may not make its own independent factual findings or take additional evidence to support such findings."). Rather, "[f]indings of fact are the sole province of the bankruptcy court." Danduran v. Kaler (In re Danduran), 657 F.3d 749, 752 (8th Cir. 2011) (finding that the Bankruptcy Appellate Panel erred in making a factual finding).

While Appellants cite In re Patch, 356 B.R. 450, for the proposition that this Court may rule on the parties' appeals (see Gervais, No. 15-CV-2084 (SRN), Letter of 9/3/15 to District Judge [Doc. No. 18]; Downs, No. 15-CV-2085 (SRN), Letter of 9/3/15 to District Judge [Doc. No. 14]), the Court finds In re Patch distinguishable. Granted, in In re Patch, the initial reviewing court, the Bankruptcy Appellate Panel ("B.A.P."), undertook an analysis in a case that lacked an underlying final judgment, from which the bankruptcy court had ruled without a written opinion. Blocker v. Patch (In re Patch), 356 B.R. 450, 455 n.3 (B.A.P. 8th Cir. 2006) (explaining limited record and that neither party had filed a transcript of the bankruptcy court's hearing). But while In re Patch involved a pending

16

wrongful death action, it also involved an underlying criminal verdict, which is not the case here. In any event, nothing about In re Patch requires this Court to depart from the general requirement that the bankruptcy court conduct the fact finding in the first instance. Rather, the Eighth Circuit's decision in Treadwell v. Glenstone Lodge, Inc. (In re Treadwell) dictates otherwise, as the Eighth Circuit there required the bankruptcy court to conduct the initial fact finding:

> The parties argue at length as to whether the BAP "erred in finding" Larry and Carole were not partners in Memory Travel and, even if there were a partnership, whether the BAP "erred in finding" Glenstone failed to prove Larry knew or should have known of Carole's fraud. The parties' arguments are misplaced, the BAP's role is to review, not make, factual findings. The BAP should have instructed the bankruptcy court to decide in the first instance whether the Treadwells were partners and, if so, whether Larry knew or should have known of Carole's fraud. We decline the parties' joint invitation to review the BAP's factual findings or make our own factual findings.

637 F.3d 855, 863 (8th Cir. 2011). This Court similarly declines the parties' joint invitation to make its own factual findings.

The Court therefore reverses and remands to the Bankruptcy Court. In order to make findings of fact and conclusions of law, the Bankruptcy Court must examine the underlying record for the elements of willfulness and maliciousness, as those terms are applied under § 523(a)(6) of the Bankruptcy Code, and the record at trial.[4] The

---

[4] For example, the Bankruptcy Court may want to consider, as Gervais and Downs note, that the state court twice denied Hearing Associates' request to submit the issue of punitive damages to the jury. However, any such analysis of the denial of punitive damages in state court should bear in mind the applicable standards for such conduct, as well as the differing standards of proof (e.g., a clear-and-convincing standard is required to establish the right to punitive damages under Minnesota law versus the preponderance-of-the-evidence standard to establish willfulness and maliciousness under the Bankruptcy

17

Bankruptcy Court is in the best position to determine how best to proceed in making its necessary factual determination.

In addition, the Bankruptcy Court may consider whether any additional evidence would address the issue of nondischargeability. "[T]he bankruptcy court retains the discretion to reopen the record . . . ." In re Treadwell, 637 F.3d at 865. Toward that end, the Bankruptcy Court may consider holding an evidentiary hearing.

Also, the Bankruptcy Court may consider whether it is necessary to rule on the three claims that were dismissed by the state court. In the adversary proceeding, Hearing Associates only sought a ruling on whether the claims that resulted in judgment, as well as a forfeiture damages claim for the breach of duty of loyalty, were nondischargeable.

Finally, the Bankruptcy Court may wish to reconsider whether to stay the bankruptcy matter to allow the state court to enter judgment. See Wood v. Fiedler, 548 F.2d 216, 219 (8th Cir. 1977) ("[T]he bankruptcy court may, in an exercise of discretion, defer the determination of dischargeability until after the liquidation of the underlying claim in another court of competent jurisdiction.") At the hearing before this Court, counsel for both parties indicated that they would not object to finalizing the post-trial motions and obtaining judgment in state court.

---

Code).

**THEREFORE, IT IS HEREBY ORDERED that:**

The Bankruptcy Court's March 20, 2015 Orders are **REVERSED** and the matters of <u>Hearing Associates, Inc. v. Gervais</u> and <u>Hearing Associates, Inc. v. Downs</u> are **REMANDED** to the Bankruptcy Court for further proceedings not inconsistent with this opinion.

Dated: February 8, 2016

<u>s/Susan Richard Nelson</u>
SUSAN RICHARD NELSON
United States District Judge